IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RONALD BISHOP,<br>　Plaintiff | * | |
| v. | * | Civil Action No. JKB-14-2300 |
| WARDEN BETTY JOHNSON, et al.,<br>　Defendants | * | |

## **MEMORANDUM**

Ronald Bishop, Sr., ("Bishop") is an inmate currently confined at the Baltimore City Correctional Center in Baltimore, Maryland. Bishop filed the instant civil rights complaint while housed at the Dorsey Run Correctional Facility against Warden Betty Johnson, Case Manager C. Session, Institutional Administrative Remedy (ARP) Coordinator K. Torney, Officer Aload,[1] and the Commissioner of Corrections. ECF 1. Bishop claims that his personal property including legal materials were improperly confiscated from him on March 29, 2014. *Id*. Pending are defendants' Warden Betty Johnson, Lt. James Simmons, Correctional Case Management Specialist (CCMS II) Keisha Torney, and CCMS II Chantell Session's[2] motion to dismiss or, in the alternative, for summary judgment, Bishop's motion for preliminary injunction, and his opposition to the dispositive motion. ECF Nos. 16, 18 & 21. The court will dispense with a hearing. *See* Local Rule 105.6. (D. Md. 2014). For the reasons stated

---

[1] Additionally, Officer Aload was not properly served with the complaint. For the reasons that follow, had the officer been properly served, he would be entitled to summary judgment. As such, the complaint against Aload will be dismissed.

[2] The Clerk shall amend the docket to reflect the correct spellings of defendants' names.

below, the court will, by separate Order, GRANT defendant's dispositive motion and DENY Bishop's motion for preliminary injunction.[3]

Background

In the instant case, plaintiff indicates that on March 29, 2014, while housed at the Dorsey Run Correctional Facility he was "shook down" by Officer Aload. Plaintiff states that all of his legal and personal mail, pictures, and writing materials were confiscated. He was advised that he was under investigation by the intelligence unit. Plaintiff states that in violation of Division of Correction policy he was not provided a confiscation slip to sign. ECF 1. Attached to his complaint are copies of plaintiff's Administrative Remedy (ARP) requests attempting to resolve the issue regarding the confiscation of his property. ECF 1-1. Within the attachments to plaintiff's complaint are additional allegations that his incoming legal mail was opened outside of his presence and delayed in its delivery to him in violation of DOC policy. *Id.*, p. 13-14.

Defendants indicate that in March of 2014, plaintiff was under investigation by the Baltimore City Intelligence Department; as a result of an investigation, his mail was confiscated. ECF 16, Ex. 1. Plaintiff's confiscated mail was sent to Lt. James Simmons, a State

---

[3] A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). Plaintiff's request for injunctive relief shall be denied in that he does not clearly establish that he would suffer immediate and irreparable injury, loss, or damage if the requested relief is not granted. Inasmuch as plaintiff has a forum for his complaint, equitable remedies, such as temporary restraining orders, shall not be given. If plaintiff feels his mail his being mishandled he is free to file a new civil rights complaint setting out those allegations. In short, the conditions set out by plaintiff do not warrant immediate emergency relief.

intelligence officer responsible for investigating security threats to Maryland prisons. *Id*. Simmons possessed plaintiff's mail for approximately two weeks and then returned it unopened and uninspected by him to the institution. *Id*. Plaintiff acknowledges the mail was returned to him on April 10, 2014. ECF 1.

Standard of Review

A.      Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusional couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusional factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.      Motion for Summary Judgment

Summary Judgment is governed by Rule 56(a), which provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Rule 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or

4

the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

The court must first examine defendants' assertion that plaintiff failed to exhaust his administrative remedies prior to filing suit. The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that

5

defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

In Maryland, filing a request for administrative remedy with the warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann., Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008), *see also Blake v. Ross*, 787 F.3d 693 (4th Cir. 2015).

Thus, plaintiff's claims must be dismissed if defendants raise the affirmative defense

and also prove that Plaintiff has failed to exhaust available remedies. *See Jones*, 549 U.S. at 216–17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review). Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002). Exhaustion is a precondition to filing suit in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (prisoner may not exhaust administrative remedies during the pendency of a federal suit). Plaintiff had not completed administrative review before instituting this case in July of 2014.

In an ARP dated April 4, 2014, plaintiff complained that all of his legal and personal mail and photographs had been improperly confiscated due to his being investigated by the intelligence unit. ECF 1-1, p. 4. The ARP does not contain a case number and there is no indication same was ever processed by the ARP coordinator. *Id.*

On April 12, 2014, plaintiff filed ARP MCPRS #0243-14 complaining that his property

had been improperly confiscated due to his being investigated by the intelligence unit. ECF 1-1, p. 2. In this ARP, plaintiff indicates that he wrote an ARP on April 4, 2014. *Id*. The ARP was marked received on May 30, 2014, and Torney responded on June 6, 2014, dismissing the ARP as previously resolved or repetitive to MCRPRS # 0242-14. *Id*., p. 3.

On April 12, 2014, plaintiff filed ARP MCPRS #0242-14 complaining that his property had been improperly confiscated due to his being investigated by the intelligence unit. ECF 1-1, p. 2. In this ARP, plaintiff indicates that he wrote an ARP on April 4, 2014. *Id*. The ARP was marked received on May 30, 2014, and Torney responded on June 6, 2014. Plaintiff does not indicate what response he received to this ARP. *Id*., p. 1.

On May 5, 2014, plaintiff filed an appeal to the Commissioner of Corrections concerning the confiscation of his property. *Id*., p. 9. Within that appeal, Plaintiff also indicated that on April 7, 2014, his legal mail was delivered to him with his regular mail, opened and taped back together. *Id*., p. 10. The appeal does not reference a case number or indicate what response was received by the institutional coordinator or warden. *Id*.

On May 19, 2014, Session, the DPSCS ARP Coordinator advised plaintiff that his "Request for Administrative Remedy" would not be processed as Sessions was unable to determine plaintiff's intent. Plaintiff was advised that if he were attempting to appeal the institutional decision (or lack of a decision) he needed to file an Appeal of Procedural Dismissal using the appropriate appellate form. ECF 1-1, p. 5. Plaintiff was specifically advised that an ARP must be completed on the proper forms, signed and dated by an officer, and submitted to the institutional ARP Coordinator. Thereafter, plaintiff must wait for either the warden's response or an appropriate time frame to pass without a response in order to file an appeal. *Id*.

Plaintiff wrote to Session, attaching a copy of ARP MCPRS #0243-14 that did not

8

indicate any action by the warden or institutional ARP coordinator. *Id*. pp. 6-7. Session responded to plaintiff indicating that the Warden must first address plaintiff's concern and Session forwarded the ARP, on May 28, 2014, to the Warden.[4] *Id*., p. 8.

On November 25, 2014, the Commissioner found plaintiff's ARP (MCPRS-0370-14) meritorious in part in that the Warden indicated that "Commitment correspondences are not considered legal [mail.]" The Commissioner noted that correspondence from DPSCS is considered legal mail when received on official stationery; however, the mail plaintiff received was not on official letterhead or in an official envelope; rather, the letter was folded with plaintiff's name and housing location written on the back. ECF 21-4. As such, there was no indication that the correspondence was legal mail. *Id*. Plaintiff indicates that the Commissioner never responded to plaintiff's other ARPs. *Id*.

It is clear that plaintiff filed ARPs with the administrative coordinator, the Warden of DRCF, and appealed to the Commissioner. ECF 1, Ex. 1. Scott Oakley, Executive Director of the inmate Grievance Office avers, however, that as of October 28, 2014, plaintiff had never filed an grievance with the IGO. ECF 16, Ex. 2.

Attached to his opposition to the dispositive motion, plaintiff provides a copy of an appeal of administrative remedy response dated December 3, 2014, direct to the IGO. The appeal has no indicia of being sent or received by the IGO and fails to include the Case Number of the ARP being appealed. ECF 21-1, p. 1. Plaintiff attaches a second appeal to the IGO dated February 21, 2015, listing Case No. 201-500087 as the case being appealed. This appeal indicates plaintiff received a letter from the IGO dated February 12, 2015, requesting copies of

---

[4] Presumably this explains why the ARP coordinator date stamped plaintiff's ARPs as being received on May 30, 2014 and denied relief on June 6, 2014. *Id*., pp.1-3.

all ARPs and receipts regarding his complaints of legal mail problems. ECF 21-2. The letter from the IGO to plaintiff dated February 12, 2015, references IGO No. 20150087 and indicates that the IGO received a letter from plaintiff dated January 9, 2015, indicating he filed a grievance with the IGO in December of 2014. Plaintiff was advised that the IGO had no record of receiving the December 2014 grievance. The IGO indicates that the grievance involved his complaint that legal mail was not being opened in his presence. ECF 21-3. Plaintiff was directed to provide a copy of all missing ARP paperwork. *Id*. Plaintiff filed the instant complaint on July 18, 2014. ECF 1. It is clear that plaintiff failed to exhaust administrative remedies as to his both his property and mail claims prior to instituting the instant case. While it is clear that there was confusion and delay in the processing of plaintiff's ARPs at the institutional and Commissioner level, plaintiff offers no explanation for his six-month delay in contacting the IGO. In light of the foregoing, plaintiff's complaint is subject to dismissal for non-exhaustion.

      Even if plaintiff had properly exhausted his administrative remedies, defendants would be entitled to summary judgment. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post-deprivation remedy. Plaintiff's post-deprivation remedies include Maryland's Tort Claims Act and the Inmate Grievance Office. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982) (relying on *Parratt* to find sufficient due process is afforded through post-deprivation remedies available in the Maryland courts as to personal injury claims and dismissing plaintiff's due process claims). Even if plaintiff's property was improperly

confiscated and destroyed, such a claim does not rise to a constitutional violation.

In regard to plaintiff's claim that incoming legal mail was improperly handled, his claim fails. Isolated instances of mishandling of inmate mail do not constitute valid constitutional claims. *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (isolated incident of mishandling does not show actionable pattern or practice). Occasional incidents of delay or non-delivery of mail do not rise to a constitutional level. *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990). The only evidence plaintiff offers of injury are conclusory statements that the conduct of correctional staff violated his constitutional rights. Additionally, while plaintiff generally claims that issues with his mail are an "ongoing problem" he has failed both in his complaint and in his ARPs to delineate the specific instances of how and when his incoming mail was tampered with. Without greater specificity, plaintiff's claims fail.

Additionally, to the extent that written directives were not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations concerning the confiscation of plaintiff's property and/or the handling of his incoming mail does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987). Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Accordingly, a separate Order shall be entered granting defendants' dispositive motion, denying plaintiff's motion for injunctive relief, and dismissing the complaint as to Officer Aload.


Dated: July  13th , 2015                               /s/
                                               James K. Bredar
                                               United States District Judge